**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ERIK SLAMA,
                    Appellant,

          v.

DEPARTMENT OF HEALTH AND
    HUMAN SERVICES,
                    Agency.

DOCKET NUMBERS
SF-531D-15-0266-I-4
SF-0432-16-0496-I-1

DATE: August 24, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Terina M. Williams, Esquire, and Shaun Southworth, Esquire, Atlanta,
    Georgia, for the appellant.

Melissa A. Manson, San Francisco, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed separate petitions for review of the initial decisions, which sustained the denial of a within-grade increase (WIGI) and his chapter 43 removal for unacceptable performance. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in these appeals, we JOIN them under 5 C.F.R. § 1201.36(b) because doing so will expedite processing without adversely affecting the interests of the parties.[2] We find that the petitioner has not established any basis under section 1201.115 for granting the petitions for review. Therefore, we DENY the petitions for review. Except as expressly MODIFIED to recognize and apply the decision in *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021), to the agency's charge of unacceptable performance and, as it concerns the appellant's whistleblower reprisal affirmative defense, find that the appellant engaged in protected activity when he filed an Office of Special Counsel (OSC) disclosure complaint and as to the analysis of the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), we AFFIRM the initial decisions, which are now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      The appellant was employed by the agency's Food and Drug Administration in the Import Operations Branch of its Los Angeles District Office (LADO). *Slama v. Department of Health & Human Services*, MSPB Docket No. SF-531D-

---

[2] We find joinder appropriate here because many of the relevant facts are the same for both appeals and the appellant is making some of the same arguments in his petitions for review.

15-0266-I-1, Initial Appeal File (0266 IAF), Tab 6 at 104; *Slama v. Department of Health & Human Services*, MSPB Docket No. SF-531D-15-0266-I-4, Appeal File (0266 I-4 AF), Tab 19, Nov. 30, 2016 Hearing Compact Disc (HCD1), Track 4 at 3:32-3:52, 8:07-8:52 (testimony of the appellant's supervisor).[3] In May 2010, the Director of the LADO Import Operations Branch promoted the appellant to the Supervisory Consumer Safety Officer (SCSO) position, becoming his immediate supervisor in that role. 0266 IAF, Tab 6 at 104; HCD1, Track 4 at 10:32-11:30 (testimony of the appellant's supervisor). As SCSO, the appellant was responsible for supervising Consumer Safety Officers charged with inspecting and investigating regulated commodities and their manufacturers. 0266 I-4 AF, Tab 12 at 201-04. SCSOs are required to act as a resource for their team members on technical matters, and to "plan[ ], assign[ ], review[ ], and evaluat[e] the work and performance of those employees." *Id.* at 203. They also are expected to act as liaisons with outside entities such as state and local health officials and other Federal agencies. *Id.* at 201, 204-05.

¶3        On June 29, 2011, an agency Quality System Manager emailed an inquiry to the appellant indicating that she had received an anonymous complaint that some employees on a different SCSO's team were improperly reporting the amount of time it took to complete specific tasks. *Slama v. Department of Health & Human Services*, MSPB Docket No. SF-531D-15-0266-I-2, Appeal File (0266 I-2 AF), Tab 10 at 152; 0266 I-4 AF, Tab 20, Dec. 1, 2016 Hearing Compact Disc (HCD2), Track 3 at 18:20-19:20 (testimony of the appellant). She also stated that the SCSO for the team in question had acknowledged that the time was reported incorrectly. 0266 I-2 AF, Tab 10 at 152. On June 30, 2011, the appellant responded via email to the Quality System Manager that he "consider[ed] these complaints to have merit and be of a high severity." *Id.* at 151. He copied his supervisor on this response. *Id.*

---

[3] The appellant's WIGI appeal was dismissed without prejudice and refiled three times, resulting in the four docket numbers associated with the appeal.

¶4        In mid-2012, the Deputy Director of the Import Operations Branch asked the appellant what he thought of a photodocumentation system (PDS) then being used by the branch.[4]  HCD2, Track 3 at 28:05-28:46 (testimony of the appellant). The appellant responded that he believed PDS was not an "added benefit" because "it was not doing optical recognition and it was not even connected to [the agency's] software – it was not online at all."  *Id.*  Thus, the appellant believed it was not an improvement over the hand-held cameras that already had been issued to employees.  *Id.*

¶5        In February 2013, the appellant's supervisor gave the appellant a summary rating of 3 out of a possible 5, or "achieved expected results," for the 2012 performance year.[5]  0266 I-4 AF, Tab 10 at 24, 33.  In February 2014, the appellant's supervisor gave the appellant a summary rating of 1, or "achieved unsatisfactory results," for the 2013 performance year as a result of rating the appellant's performance at a level 1 on four critical elements:  communication, administrative requirements, technical competency, and employment management culture/leadership.  0266 IAF, Tab 6 at 65-78.  Under the agency's Performance Management Appraisal Plan, a rating of 1 on any critical element results in a summary rating of 1.  *Slama v. Department of Health & Human Services*, MSPB Docket No. SF-0432-16-0496-I-1, Initial Appeal File (0496 IAF), Tab 11 at 48-49.

¶6        In May 2014, the appellant had completed the waiting period for his next WIGI.  0266 IAF, Tab 6 at 24, 61.  His supervisor postponed making a decision regarding whether to grant the WIGI at that time.  *Id.*  In September 2014, he

---

[4] Except during the Director of the Import Operations Branch's absences, the Deputy Director did not supervise the appellant.  HCD1, Track 8 at 3:40-4:16 (testimony of the Deputy Director).  The appellant's supervisor during all relevant periods remained the Director of the Import Operations Branch.

[5] The agency's performance year is the same as a calendar year.  *Slama v. Department of Health & Human Services*, MSPB Docket No. SF-0432-16-0496-I-1, Initial Appeal File, Tab 11 at 48.

decided to deny the WIGI based on his determination that the appellant was not performing at an acceptable level of competence (ALOC). *Id.* at 24-32. The appellant requested reconsideration from his second-level supervisor, the Acting District Director of LADO, and provided a detailed response to his supervisor's assessment of his performance. *Id.* at 15-22. He also alleged that he received the low score and was subjected to a hostile work environment in reprisal for his June 30, 2011 email response to the Quality System Manager. *Id.* at 22. The Acting District Director denied the appellant's reconsideration request, and the agency withheld his WIGI. *Id.* at 12-13.

¶7        In February 2015, the appellant's supervisor again gave the appellant a summary rating of 1 for the 2014 performance year. 0266 I-4 AF, Tab 16 at 4. This summary rating resulted from the appellant receiving a level 1 on the same four critical elements at issue in his rating for the 2013 performance year. *Id.* at 4-22. A month later, the appellant's supervisor issued the appellant a 90-day Performance Improvement Plan (PIP). 0496 IAF, Tab 6 at 93, 128-48. In March 2015, the appellant filed an equal employment opportunity (EEO) complaint disagreeing with his WIGI denial, 2014 performance year rating, and placement on a PIP. 0266 I-4 AF, Tab 12 at 160-66; 0496 IAF, Tab 21 at 19 n.9, Tab 22 at 21.

¶8        In April 2015, the appellant filed two complaints with the Disclosure Unit of OSC. 0496 IAF, Tab 14 at 207-32. He again raised his concerns about PDS, asserting that employees were being required by his supervisor, who purchased PDS on behalf of the agency, to use both traditional cameras and PDS at the same time and that the cost of PDS "well exceeds $10,000 of wasted money." *Id.* at 212. He also indicated that in December 2011, his supervisor had installed a voice over internet protocol system in the office's space in San Pedro, California, just prior to relocating to Long Beach, California. *Id.* at 227-29. He asserted that the installation just prior to an office move wasted "hundreds of thousands of dollars." *Id.* at 227.

¶9  In August 2015, the appellant's supervisor notified the appellant that he had failed the PIP. 0496 IAF, Tab 6 at 114-15. Three months later, the appellant's supervisor proposed the appellant's removal for unacceptable performance. *Id.* at 93-111. The appellant responded to the Acting District Director, who issued a decision removing the appellant effective April 23, 2016. *Id.* at 12-90.

¶10  The appellant filed separate appeals of his WIGI denial and removal. 0266 IAF, Tab 1; 0496 IAF, Tab 1. The administrative judge held a single hearing for both appeals. 0266 I-4 AF, Tab 15 at 2. She then issued two separate initial decisions sustaining both agency actions. 0266 I-4 AF, Tab 23, Initial Decision (0266 ID); 0496 IAF, Tab 25, Initial Decision (0496 ID).

¶11  The administrative judge found that the agency's performance plan was approved by the Office of Personnel Management (OPM) and that the appellant's performance standards were both valid and communicated to him. 0266 ID at 5-7; 0496 ID at 7-8; 0266 IAF, Tab 6 at 33-41, 44-45, 79. As to the agency's denial of the appellant's WIGI, she concluded that the agency established by substantial evidence that he failed to perform at an acceptable level on three of his critical elements, i.e., communication, administrative requirements, and technical competency. 0266 ID at 7-27. As to the appellant's removal, she concluded that the agency warned him that his performance was not acceptable and gave him a reasonable opportunity to improve, and his performance remained unacceptable on the same three critical elements. 0496 ID at 8-29. As to both appeals, she denied the appellant's affirmative defenses of race and sex discrimination, reprisal for filing an EEO complaint, and reprisal for making protected disclosures and engaging in protected activity. 0266 ID at 27-37; 0496 ID at 29-48. Thus, the administrative judge upheld both the WIGI denial and removal. 0266 ID at 37; 0496 ID at 49.

¶12  The appellant has filed petitions for review of the initial decisions. *Slama v. Department of Health & Human Services*, MSPB Docket No. SF-531D-15-0266-I-4, Petition for Review File (0266 PFR File), Tab 1; *Slama v.*

*Department of Health & Human Services*, MSPB Docket No. SF-0432-16-0496-I-1, Petition for Review File (0496 PFR File), Tab 1.  As to his WIGI appeal, he disagrees with the administrative judge's finding that the agency established by substantial evidence that his performance was less than acceptable.  0266 PFR File, Tab 1 at 16-22.  As to his removal appeal, he argues that his standards were not valid and disagrees with the finding that his performance remained unacceptable in three critical elements during the PIP period.  0496 PFR File, Tab 1 at 11-13, 18-19.  In both appeals, he argues that the administrative judge erred in finding that he failed to establish his affirmative defenses.  0266 PFR File, Tab 1 at 22-25; 0496 PFR File, Tab 1 at 22-28.  He also disputes many of the administrative judge's factual findings, including those based on her credibility determinations.  0266 PFR File, Tab 1 at 11-22; 0496 PFR File, Tab 1 at 13-17, 15-18, 25-26.  The agency has filed responses to the appellant's petitions for review.[6]  0266 PFR File, Tab 7; 0496 PFR File, Tab 7.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge properly found that the agency met its substantial evidence burden as to the appellant's WIGI denial.</u>

¶13    A permanent General Schedule employee such as the appellant generally is entitled to receive a WIGI in the rate of basic pay if he is performing at an ALOC at the end of the statutory waiting period.  5 U.S.C. § 5335(a); *see Oulianova v. Pension Benefit Guaranty Corporation*, 120 M.S.P.R. 22, ¶ 6 (2013) (explaining the requirements for a WIGI in greater detail); 0266 IAF, Tab 6 at 80.  An employee is performing at an ALOC if he received a rating of level 3, or "'[f]ully successful' or equivalent," on his most recent rating of record.  5 C.F.R. § 531.404(a).  In the case of the agency's rating system, a level 3 rating means

---

[6] Neither party disputes the administrative judge's finding that the agency failed to prove that the appellant's performance was unacceptable on the critical element of employee management culture/leadership.  0266 ID at 25-26; 0496 ID at 27-29.  We discern no reason to disturb that finding.

"achieved expected results." 0496 IAF, Tab 11 at 42. Therefore, the agency must prove by substantial evidence that the appellant's performance warranted a rating of less than "achieved expected results." *Afifi v. Department of the Interior*, 33 M.S.P.R. 282, 284-85 (1987); 5 C.F.R. § 1201.56(b)(1)(i). The administrative judge extensively analyzed the agency's evidence and concluded that the agency established by substantial evidence that the appellant's performance was below "achieved expected results" in the critical elements of communication, administrative requirements, and technical competency. 0266 ID at 7-27. We agree.

¶14 As to the critical element of communication, the administrative judge found that the appellant's supervisor was less than credible when he asserted that the appellant was unresponsive to emails. 0266 ID at 17-18. She found it likely that the supervisor conflated unresponsiveness with the appellant's untimeliness in responding. 0266 ID at 18. Nonetheless, she found that the agency demonstrated that the appellant's performance did not achieve expected results on this critical element. 0266 ID at 21. For example, she found that, as alleged by the agency, the appellant was slow in responding to emails; frequently failed to identify an individual to back him up during his absences, or identified an individual who was not available; and was ineffective in his communications with his peers, subordinates, and others. 0266 ID at 18-21. The appellant argues that the administrative judge failed to support her finding that he "often did not" respond to emails "almost immediately" as his supervisor expected. 0266 ID at 18-19; 0266 PFR File, Tab 1 at 19. He also asserts that he was unaware of this "very vague and subjective" standard. 0266 PFR File, Tab 1 at 19.

¶15 The appellant's 2013 performance standards described the requirements of the communication critical element, including that "[g]uidance is issued in a timely manner, as determined by the supervisor" and that "[a]dvice is . . . timely." 0266 IAF, Tab 6 at 68. The appellant received these standards in February 2013. *Id.* at 65. As noted by the administrative judge, the appellant did not respond to a

number of emails during the 2013 rating year in a prompt manner. For example, it took him 6 calendar days to draft an email for his supervisor as directed, requesting that a package be examined at the vendor's address to expedite shipping. 0266 I-4 AF, Tab 11 at 5-7. In another example, the appellant did not provide a report that his supervisor requested "by [close of business] Today," providing it instead at 9:29 p.m. that day. 0266 I-4 AF, Tab 10 at 210. We agree with the administrative judge that the appellant's failure to promptly respond to emails in these instances did not meet the expectation of timely communications. We also find that the appellant's supervisor reasonably expected the appellant to understand the urgency of a response based on the context of the messages.

¶16    The appellant also seeks to excuse his failure to "timely and appropriately" communicate a backup during his absences. 0266 PFR File, Tab 1 at 20. He explains, "It is not always possible to know when you are going to be out sick and out for the day in advance." *Id.* However, the appellant does not provide any specific examples of when he was unexpectedly ill or his illness made it impossible for him to designate someone who was available. *Id.* Therefore, we decline to disturb the administrative judge's finding that the appellant failed to appropriately designate his backups.[7] *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (explaining that before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect and identify the specific evidence in the record which demonstrates the error), *review denied per curiam*, 669 F.2d 613 (9th Cir. 1982).

¶17    As to the critical element of administrative requirements, the administrative judge found, for example, that the appellant failed to submit his employees for awards or recognition as expected. 0266 ID at 12-13. In reaching this finding,

---

[7] To the extent that the appellant similarly makes this claim in his petition for review of the initial decision sustaining his removal, we are similarly unpersuaded. 0496 PFR File, Tab 1 at 21.

she observed that the appellant provided examples of his good performance on this element, but only provided documentary support for four of them. 0266 ID at 12 n.7. The appellant asserts that the administrative judge failed to acknowledge his testimony on these examples of his good performance. 0266 PFR File, Tab 1 at 17. However, we decline to find that the administrative judge's omitting the appellant's testimony from her discussion of this particular finding means that she did not consider it. *Id.*; *see Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 14 (2015) (observing that an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision), *aff'd per curiam*, 652 F. App'x 971 (Fed. Cir. 2016). Although not specifically mentioned in reference to this factual finding, the administrative judge cited the appellant's testimony throughout the initial decision.

¶18 As to the technical competency critical element, the appellant claims that the administrative judge failed to cite evidence in support of her conclusion that he did not complete work within agreed-upon deadlines, quickly resolve problems, and effectively manage with little supervision. 0266 PFR File, Tab 1 at 21-22; 0266 ID at 24-25. He also argues that the administrative judge failed to account for resource strain. 0266 PFR File, Tab 1 at 22. We disagree. The administrative judge's analysis reflects that she considered both testimonial and documentary evidence concerning backlogs on the appellant's team in finding that the agency established by substantial evidence that the appellant's performance on this element was not at an ALOC. 0266 ID at 21-25. In doing so, she considered but ultimately discounted the appellant's claim that he could not meet timeliness requirements due to a staffing shortage. 0266 ID at 20, 24.

¶19 Thus, we agree with the administrative judge and find that the agency met its burden to demonstrate by substantial evidence that the appellant's performance

was not at an ALOC. Accordingly, we do not disturb her finding that the agency met its burden of proof regarding the WIGI denial.

<u>The administrative judge properly sustained the charge of unacceptable performance in connection with the appellant's removal.</u>

¶20    To defend an action under chapter 43, the agency must prove by substantial evidence that: (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in his performance during the appraisal period and gave him an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element.[8]  *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15. The administrative judge concluded that the agency proved each of these requirements by substantial evidence. 0496 ID at 7-8, 14-15, 23, 25, 27. Of these findings, the appellant disputes that his standards were valid.[9] 0496 PFR File, Tab 1 at 11-13,

---

[8] At the time the initial decision was issued, there was a line of Board cases holding that, in a chapter 43 removal action, an agency is not required to prove that an appellant's performance prior to the PIP was unacceptable. *E.g.*, *Thompson v. Department of the Navy*, 89 M.S.P.R. 188, ¶ 19 (2001). During the pendency of the petition for review, the U.S. Court of Appeals for the Federal Circuit overruled that line of cases, holding that, to support a chapter 43 adverse action, an agency is required to justify its imposition of the PIP by proving by substantial evidence that the appellant's pre-PIP performance was unacceptable. *Santos*, 990 F.3d at 1360-61, 1363 (Fed. Cir. 2021). Notwithstanding that line of Board case law, the administrative judge in this appeal did, in fact, adjudicate the issue of the appellant's pre-PIP performance. 0496 ID at 14-15. We find that the record is adequately developed on the issue and that the parties had a full and fair opportunity to address it.

[9] The appellant frames some of his challenges to the standards as a denial of a reasonable opportunity to improve. 0496 PFR File, Tab 1 at 11. However, he does not allege that the 90-day PIP period was too short or that the agency failed to provide any of the assistance promised in the PIP. *Id.* Thus, we have interpreted his arguments as

18-19, 21-22. He also contests some of the administrative judge's findings that his performance remained unacceptable. *Id.* at 18-22. The appellant further argues that he never should have been placed on a PIP because his performance was "fully successful."[10] *Id.* at 17-18.

> *The administrative judge properly concluded that the agency's performance standards were valid.*

¶21    Performance standards must, "to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria . . . related to the job in question." 5 U.S.C. § 4302(c)(1); *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 29 (2010). Standards must be reasonable, realistic, and attainable and clearly stated in writing. *Lee*, 115 M.S.P.R. 533, ¶ 29. Provided those requirements are met, however, the Board will defer to managerial discretion in determining what agency employees must do to perform acceptably in their positions. *Id.*

¶22    As the administrative judge observed, the agency communicated the appellant's performance standards to him in writing, including the critical elements of his position. 0496 IAF, Tab 18; 0496 ID at 7-8. Further, the PIP, which was also in writing, identified the specific tasks that he needed to complete on the identified critical elements to improve his performance to a level 2, or "partially achieved expected results." 0496 IAF, Tab 6 at 128-48; *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 23 (2013) (recognizing that an

---

challenging the validity of the standards. In any event, the administrative judge found that the 90-day PIP was sufficient to provide the appellant with a reasonable opportunity to demonstrate acceptable performance. 0496 ID at 12-13. We discern no basis to disturb this finding. *See Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶¶ 10-12 (2013) (finding that a 7-week period was adequate to enable a secretarial employee to demonstrate acceptable performance); *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 33 (2010) (observing that a 30-day PIP can satisfy an agency's obligation to provide an employee with a reasonable opportunity to demonstrate acceptable performance).

[10] We decline to disturb the remaining findings that are uncontested on review.

agency may cure any vagueness in its standards through written or oral communications, including the PIP); *Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶ 10 (2001) (recognizing that the degree of objectivity and specificity required in performance standards depends on the job involved and that an employee with greater discretion and independence may have less objective standards).

¶23    On review, the appellant alleges that his supervisor "expected [him] to complete all of the tasks in the PIP to almost 100% satisfaction." 0496 PFR File, Tab 1 at 12-13; 0496 IAF, Tab 22 at 13. Even if the appellant's assertions were true, the U.S. Court of Appeals for the Federal Circuit has found that "absolute performance standards" are not prohibited by 5 U.S.C. § 4302(c)(1). *Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1336-37 (Fed. Cir. 2004). However, this assertion is belied by the PIP itself, which allowed for a certain number of variances. For example, under the communications critical element, the PIP required the appellant to communicate goals and guidance to his subordinates. 0496 IAF, Tab 6 at 138. Yet, the PIP permitted up to two substantiated complaints from subordinates attributable to the appellant's failure to disseminate or share information with them. *Id.* As another example, under the administrative requirements critical element, the PIP provided that the appellant was required to submit to his supervisor draft agenda items for staff meetings at least 24 hours in advance. *Id.* at 132. However, it also permitted two instances of failure to meet this deadline. *Id.*

¶24    The appellant argues that there was not enough time to complete the PIP requirements in addition to his regular duties. 0496 PFR File, Tab 1 at 11-12. The administrative judge considered this argument below, but rejected it. 0496 ID at 9-10. She found that the PIP contained specific tasks designed to assist the appellant to meet his standards, not additional duties. *Id.* The appellant does not point to evidence in the record to support his claim that during the PIP "half his time was eaten by training and meetings." 0496 PFR File, Tab 1 at 11;

*see Weaver*, 2 M.S.P.R. at 133. Accordingly, we agree with the administrative judge that the performance standards were valid. 0496 ID at 7-8.

*The appellant's performance leading up to the PIP was unacceptable.*

¶25 The administrative judge found that the agency demonstrated by substantial evidence that, before being placed on the PIP, the appellant's performance in the critical elements of administrative requirements, communication, and technical competence was unacceptable. 0496 ID at 14. The administrative judge based her finding largely on the same facts and analysis under which she had affirmed the agency's ALOC determination in connection with the WIGI denial. *Id.* She further found substantial evidence that the appellant did not improve his performance to an acceptable level between the August 2014 WIGI denial and the March 2015 PIP. 0496 ID at 14-15.

¶26 On petition for review, the appellant argues, with reference to his petition for review in the WIGI appeal, that the agency failed to show by substantial evidence that his performance prior to the PIP was unacceptable. 0496 PFR File, Tab 1 at 17-18. We have already addressed those arguments above in the context of the WIGI denial and found them unpersuasive. *Supra*, ¶¶ 13-18. For the same reasons, we also find them unpersuasive in the context of the chapter 43 removal action. For the reasons explained in the initial decision in the chapter 43 appeal and in the administrative judge's extensive analysis of the relevant facts in her initial decision on the WIGI denial, we agree that the agency has proven by substantial evidence that, prior to the PIP, the appellant's performance was unacceptable in the critical elements of administrative requirements, communication, and technical competence. 0226 ID at 8-27; 0496 ID at 14-15.

*The appellant's performance remained unacceptable in one or more of his critical elements.*

¶27 As indicated above, the administrative judge found that the appellant's performance remained unacceptable in three critical elements. 0496 ID at 23, 25, 27. The appellant contests some of these findings. 0496 PFR File, Tab 1

at 18-22. However, he leaves many others uncontested. *Id.* at 19. Below, we address only those findings the appellant has not contested on review, as these deficiencies sufficiently establish that the appellant's performance was below a level 2, or partially achieved expected results.

¶28    The critical element of communication essentially required timely, clear, and documented communications. 0496 IAF, Tab 6 at 134. As to this critical element, the appellant does not dispute that he did not ensure that his backups were available and aware of their backup assignments. 0026 ID at 23-25; 0496 IAF, Tab 6 at 102, 137; 0266 I-4 AF, Tab 8 at 101, 123, 151-52; 0496 PFR File, Tab 1 at 21. He also does not dispute that he did not submit draft emails for external audiences to his supervisor for advance review as mandated by the PIP. 0496 ID at 25; 0496 IAF, Tab 6 at 102, 137; 0496 PFR File, Tab 1 at 21. The purpose of this requirement was to improve the appellant's communications with these audiences. 0496 IAF, Tab 6 at 137.

¶29    The administrative requirements critical element related to the appellant's supervisory duties, reflecting his responsibility to, for example, assign work to his team, develop his team members professionally, and reward their performance. *Id.* at 130. As to this critical element, the appellant does not dispute that he only made one employee award submission, and not two as the PIP required. 0496 ID at 21; 0496 IAF, Tab 6 at 96, 133. He also does not dispute that he did not submit notes of one-on-one meetings he held with his subordinates or submit individual development plans for them as set forth in the PIP. 0496 ID at 20; 0496 IAF, Tab 6 at 96, 133.

¶30    Finally, the technical competency critical element required that the appellant understand and ensure compliance with applicable rules and regulations and oversee the timeliness of the work produced by his team. 0496 IAF, Tab 6 at 138. The PIP explained that the appellant had failed to monitor his team's workload, which had resulted in a backlog. *Id.* at 138-39. Further, according to the PIP, the appellant had failed to conduct audits of his subordinates' work. *Id.*

at 139. The appellant does not dispute that he failed to conduct audits of his subordinates' work or track their workload as required by the PIP. *Id.* at 103-04, 138-41; 0496 ID at 27.

¶31    Even putting aside the deficiencies that the appellant continues to dispute on review, we find that the undisputed deficiencies listed above are sufficient to support the administrative judge's finding that the appellant failed on all three critical elements at issue. 0496 PFR File, Tab 1 at 18-22; 0496 ID at 14-27. When, as here, an appellant's performance is unacceptable on at least one, but not all, components of a critical element, the agency must show substantial evidence that the appellant's performance warranted an unacceptable rating on the element as a whole. *Lee*, 115 M.S.P.R. 533, ¶ 36. Such evidence may include that the appellant knew or should have known the significance of the components at issue and evidence showing the importance of the components to the duties and responsibilities entailed with the critical element. *Id.* As detailed above, we find that the appellant was aware that his failures were central to the critical elements at issue, and thus the agency met this burden. Accordingly, we affirm the administrative judge's finding that the agency established by substantial evidence that the appellant's performance remained unacceptable on at least one of his critical elements.

The administrative judge properly found the appellant failed to prove his affirmative defenses of race and sex discrimination and retaliation for EEO activity.

¶32    The appellant alleged that the agency denied him a WIGI and removed him because he is a white male. 0266 I-4 AF, Tab 15 at 3-4; 0266 ID at 28; 0496 ID at 30. He further alleged that his removal was in retaliation for his March 2015 EEO complaint. 0266 I-4 AF, Tab 15 at 4. The administrative judge found that the appellant did not prove his discrimination or retaliation claims. 0266 ID at 31; 0496 ID at 34, 37-38.

¶33    To establish such a claim of title VII discrimination or retaliation, an appellant must prove that a prohibited consideration was a motivating factor in the contested personnel action, even if it was not the only reason. *See Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 41 (2015). In determining whether an appellant has met his burden, the Board will consider as a whole all of the evidence relevant to an improper motive. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 28-31 (2016). The administrative judge considered the evidence below, including the appellant's evidence that his supervisor was harsh to him and rated another white male below what that employee expected. 0266 ID at 28-31; 0496 ID at 30-38. However, she concluded that both men and women, and white and nonwhite employees, found the appellant's supervisor harsh and were disappointed by his ratings. 0266 ID at 30; 0496 ID at 33-34.

¶34    As to the appellant's EEO reprisal claim, the administrative judge observed that the appellant's supervisor and the Acting District Director had denied the appellant a WIGI and rated him as achieving unsatisfactory results, and the appellant's supervisor had issued the PIP before they learned of the appellant's EEO complaint. 0496 ID at 35; 0266 IAF, Tab 6 at 11-13, 24-32, 65; 0266 I-4 AF, Tab 16 at 4; 0496 IAF, Tab 6 at 128. Thus, the agency, without knowing of his EEO complaint, viewed the appellant as having failed in his performance expectations. 0496 ID at 37-38. In light of her determination that the appellant's performance continued to be unacceptable, the administrative judge was not persuaded that the appellant's EEO activity was a motivating factor in his removal. *Id.*

¶35    The appellant's arguments on review do not suggest that the administrative judge erred in weighing the evidence. 0266 PFR File, Tab 1 at 22-24; 0496 PFR File, Tab 1 at 22-26. Merely rearguing factual issues raised and properly resolved by the administrative judge below does not establish a basis for review. *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987); *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding

no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility). Although he reiterates his evidence on review, the appellant does not provide any basis to revisit the administrative judge's well-reasoned findings. 0266 PFR File, Tab 1 at 22-23; 0496 PFR File, Tab 1 at 23-25. Accordingly, we affirm the administrative judge's finding that the appellant did not prove his discrimination and EEO reprisal claims.[11]

<u>The administrative judge properly found that the appellant failed to prove his affirmative defense of retaliation for protected disclosures and activity.</u>

¶36    In adverse action appeals such as these, an appellant's claim of reprisal for making a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaging in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), is analyzed under the burden-shifting scheme set forth in 5 U.S.C. § 1221(e). *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015). The appellant must first prove that his disclosure or activity was protected under sections 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D). *Alarid*, 122 M.S.P.R. 600, ¶¶ 12-13. He must next prove that his protected disclosure or activity was a contributing factor in the challenged personnel action. *Id.* If the appellant makes both of these showings by preponderant evidence, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's disclosure or activity. *Id.*, ¶ 14.

---

[11] Because we affirm the administrative judge's finding that the appellant failed to meet his initial burden to prove that race, sex, or retaliation for EEO activity were motivating factors in the agency's actions, we need not resolve the issue of whether the appellant or the agency has the burden to prove that discrimination and/or retaliation was a "but for" cause of the agency's decisions. *See Babb v. Wilkie*, 589 U.S. ____, 140 S. Ct. 1168, 1173-74, 1176-78 (2020) (holding that, in claims of discrimination in Federal employment arising under the Age Discrimination in Employment Act, an employer engages in illegal discrimination "if age discrimination plays any part in the way a decision is made," but that an employee must prove the discrimination was a but-for cause of the agency's action to obtain full relief).

> *The appellant made a protected disclosure and engaged in protected activity.*

¶37     The appellant alleged that he made the following disclosures and participated in the following activities:  (1) his June 30, 2011 email response to the Quality System Manager regarding an anonymous complaint of employees misreporting time spent on tasks; (2) his mid-2012 disclosure to the Deputy Director that PDS was not functioning properly; and (3) his April 2015 disclosure complaints to OSC regarding PDS and the voice over internet protocol system. 0266 I-4 AF, Tab 10 at 5, 13-15; 0496 IAF, Tab 12 at 5, 13-15.  The administrative judge determined that disclosure 1, the appellant's June 30, 2011 email, was not protected.  0266 ID at 33-34; 0496 ID at 39-41.  She found disclosures 2 and 3 were protected.  0266 ID at 34-35; 0496 ID at 41, 44.  Neither party contests these findings on review, and we decline to disturb them.[12]

> *The appellant proved that his OSC disclosure complaints were a contributing factor in his removal.*

¶38     The administrative judge found that the appellant made disclosure 2 to the Deputy Director in mid-2012, more than 2 years before the agency denied him a WIGI or removed him.  0266 ID at 34-35; 0496 ID at 41-42 & n.11.  Therefore, she found that the appellant did not prove contributing factor under the knowledge/timing test.  0266 ID at 35-36; 0046 ID at 41-42.  She also concluded that the appellant did not otherwise prove contributing factor regarding disclosure 2.  0266 ID at 36-37; 0496 ID at 42-43.  Further, she found that his OSC disclosure complaints, activity 3 above, could not have been a contributing factor in his WIGI denial because he submitted them after the agency denied his

---

[12] We modify the administrative judge's determination to also find that the appellant's disclosure complaint constituted engaging in protected activity pursuant to 5 U.S.C. § 2302(b)(9)(C), which provides that it is a protected activity to disclose information to OSC in accordance with law.  *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 12 (2016).

WIGI. 0266 ID at 33 n.14. However, she determined that the disclosure complaints were a contributing factor in his removal. 0496 ID at 44-45.

¶39  As discussed above, an appellant must prove by preponderant evidence that his protected disclosure or activity was a contributing factor in the challenged personnel action at issue. *Alarid*, 122 M.S.P.R. 600, ¶ 13. One way to establish this criterion is the knowledge/timing test, under which an employee submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 20 (2013). The Board has held that personnel actions taken within 1 to 2 years of the protected disclosure or activity satisfy the timing prong of the knowledge/timing test, but those that take place more than 2 years after the disclosure or activity are too remote to satisfy this test. *Id.*, ¶ 21.

¶40  The appellant suggested in his testimony, and appears to assert on review, that he made disclosure 2 in late 2012 and 2013. HCD2, Track 2 at 27:49-28:04 (testimony of the appellant); 0266 PFR File, Tab 1 at 5; 0496 PFR File, Tab 1 at 6. If true, he could then establish that it occurred within 2 years of his September 2014 WIGI denial. 0266 IAF, Tab 6 at 24-32. However, the administrative judge found, based on the appellant's testimony, that the appellant made this disclosure in mid-2012 to the Deputy Director. 0266 ID at 35 & n.15. We find no basis to disturb this finding. Consistent with the administrative judge's finding, the appellant only identified one specific instance in his testimony in which he made the disclosure. This instance occurred during a discussion with the Deputy Director sometime between late April and late June 2012. HDC2, Track 3 at 28:05-28:46, 30:03-30:59 (testimony of the appellant). The administrative judge found that the appellant's supervisor had knowledge that the appellant, and other employees, had complained about PDS. 0026 ID at 34-35; 0496 ID at 41-42.

¶41     The appellant also argues that he met the knowledge/timing test because his WIGI denial and removal were part of a continuing chain of events that began with his February 2014 rating of "achieved unsatisfactory results." 0266 PFR File, Tab 1 at 24-25; 0496 PFR, Tab 1 at 26-27; 0266 IAF, Tab 6 at 65-78. The administrative judge considered whether the appellant's WIGI denial and removal were the culmination of a continuum of related performance-based actions, the first of which occurred within 2 years of disclosure 2 in mid-2012. 0266 ID at 36; 0496 ID at 43; *see Agoranos*, 119 M.S.P.R. 498, ¶¶ 22-23 (finding that an appellant could satisfy the timing prong of the knowledge/timing test by showing that the personnel actions at issue were part of a continuum of related performance-based actions, the first of which occurred within 2 years of the appellant's disclosure). However, she concluded that the events at issue were not part of a continuous chain. 0266 ID at 36; 0496 ID at 43. Rather, the first summary rating that the appellant's supervisor gave him following his disclosure was a level 3, or "achieved expected results," for the 2012 performance year. 0266 ID at 36; 0496 ID at 43; 0266 I-4 AF, Tab 10 at 24, 33.

¶42     If the appellant fails to prove contributing factor through the knowledge/timing test, the Board must consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials and whether those individuals had a desire or motive to retaliate against the appellant. *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 26 (2013). The administrative judge considered whether the appellant met his burden to prove contributing factor regarding his disclosure 2 through such evidence. 0026 ID at 36; 0496 ID at 42. However, she found that he did not, observing that the appellant was one of many employees that his supervisor was aware had complained about PDS and the agency's reasons for the WIGI denial and removal were strong. 0266 ID at 36; 0496 ID at 42. The appellant has not challenged this finding on review, and we decline to disturb it.

Thus, we agree with the administrative judge that the appellant did not prove contributing factor as to disclosure 2.

¶43    The administrative judge found that the appellant's April 2015 OSC disclosure complaints were not a factor in the earlier WIGI denial.  0266 ID at 33 n.14; *see Stiles v. Department of Homeland Security*, [116 M.S.P.R. 263](#), ¶ 21 (2011) (explaining that when an alleged personnel action occurred prior to a disclosure, the disclosure could not have been a contributing factor in the personnel action).  As to the appellant's removal, she found that the appellant's supervisor was not aware of these complaints when he proposed the appellant's removal.  0496 ID at 44.  However, she observed that the deciding official was aware of them at the time he made his removal decision.  *Id.*; 0496 IAF, Tab 6 at 81.  Therefore, she concluded that the appellant proved that his OSC disclosure complaints were a contributing factor in the removal decision.  0496 ID at 44-45.  Neither party disputes these findings on review, and we decline to disturb them.

*The agency met its burden to prove it would have removed the appellant absent his protected activity.*

¶44    In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider all the relevant factors, including the following:  the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr*, 185 F.3d at 1323.  The administrative judge found that the agency established by clear and convincing evidence that it would have removed the appellant absent his OSC disclosure complaints.  0496 ID at 45-48.  She based this finding on her conclusions that the agency's evidence in support of its removal action was strong, there was little evidence of retaliatory motive by the deciding official, and there was no evidence as to whether the

agency removed employees who did not engage in protected activity and exhibited unacceptable performance. *Id.*

¶45     The appellant disputes the administrative judge's assessment of the strength of the agency's evidence in support of its removal action. 0496 PFR File, Tab 1 at 27-28. In doing so, he again asserts that his standards were not valid and his performance was acceptable. *Id.* Because we have affirmed the administrative judge's finding as to the charge of unacceptable performance, we decline to revisit these findings here. We agree with the administrative judge that the agency presented strong evidence in support of the removal action. 0496 ID at 45-47.

¶46     The appellant also disputes the administrative judge's determination that the deciding official did not have a strong retaliatory motive. 0496 PFR File, Tab 1 at 28. He cites as evidence that the deciding official originally considered a demotion instead of removal. *Id.* However, he elected the stronger penalty because among the cited instances in support of the charge was that the appellant sought to intimidate his subordinates by sitting outside his supervisor's office when they were meeting with the supervisor. *Id.*; 0266 I-4 AF, Tab 12 at 234. The agency alleged that this activity was unacceptable performance considering the administrative requirements critical element. 0496 IAF, Tab 6 at 96-97. The sub-element at issue required the appellant to "[d]emonstrate[] support for . . . employee work life quality." *Id.* at 96.

¶47     We agree with the administrative judge that the deciding official's consideration of this conduct is not evidence of retaliatory motive. 0496 ID at 46-47. Rather, it goes to the agency's choice of penalty, a matter which we cannot review in connection with a chapter 43 action.[13]  *See Lee*, [115 M.S.P.R.

---

[13] The administrative judge considered whether the deciding official had a strong motive to retaliate because he was in the appellant's chain of command. *Ayers v. Department of the Army*, [123 M.S.P.R. 11], ¶ 29 (2015) (observing that a substantial retaliatory motive may be established if an appellant's criticisms reflected on those individuals involved in her removal both in their capacity as managers and employees).

533, ¶ 6 (observing that the Board has no authority to mitigate a removal taken under chapter 43). Therefore, the administrative judge properly determined that the evidence of retaliatory motive by the agency was weak. In light of this finding, we find it unnecessary to reach the appellant's arguments that he did not engage in the alleged behavior and, even if he did, it does not concern his performance. 0496 PFR File, Tab 1 at 28.

¶48    We modify the initial decision as to the weight the administrative judge gave to the lack of evidence regarding similarly situated employees who did not engage in protected activity. The administrative judge found this factor neutral. 0496 ID at 48. While the absence of evidence on this factor may remove it from the analysis, its absence may also "cut slightly against" the agency. *Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016). Therefore, we have considered whether the lack of evidence regarding comparators requires us to reach a different conclusion. Even considering this factor, we find that the evidence in support of the agency's charge of unacceptable performance is sufficiently strong to support the administrative judge's finding that the appellant did not prove his affirmative defense of reprisal for protected activity. 0496 ID at 48; *see Miller*, 842 F.3d at 1263 (observing that an agency can meet its burden even if evidence as to a particular *Carr* factor or factors is lacking or does not weigh in its favor).

The administrative judge made proper factual findings.

¶49    As discussed above in connection with the appellant's WIGI denial, the administrative judge found that the appellant's supervisor gave inaccurate testimony that the appellant failed to respond to emails. 0266 ID at 17-18. However, she did not find the supervisor's erroneous testimony was deliberate. 0266 ID at 18. She concluded that it was the result of his conflating the

However, she concluded that the April 2015 OSC disclosure complaints concerned actions that occurred before he assumed his position. 0496 ID at 48. We discern no basis to disturb this finding, which neither party challenges on review.

appellant's untimely responses with his failure to respond. *Id.* She considered her finding that the supervisor gave inaccurate testimony regarding emails in determining whether the remainder of his testimony was credible. *Id.*; 0496 ID at 17-18. She generally credited the remainder of his testimony because she found it was corroborated by other evidence in the record. 0266 ID at 18-21; 0496 ID at 18-19, 22-23. The appellant argues that this explanation was inadequate. 0266 PFR File, Tab 1 at 11-22; 0496 PFR File, Tab 1 at 13-17, 15-18, 25-26. We disagree.

¶50    To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) his character; (3) his prior inconsistent statements, if any; (4) his bias, or lack of bias; (5) the contradiction or consistency of his version of events with other evidence; (6) the inherent improbability of his version of events; and (7) his demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The appellant claims that the administrative judge failed to apply these factors in making and explaining her credibility determinations. 0266 PFR File, Tab 1 at 14-16.

¶51    The fact that an administrative judge does not mention all of the evidence or *Hillen* factors does not mean that she did not consider them. *Mithen*, 122 M.S.P.R. 489, ¶ 14. Further, the Board defers to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002); *see Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (finding that the Board erred in failing to defer to an administrative judge's

implicit demeanor-based credibility findings after holding a hearing, even though demeanor was not specifically discussed).

¶52     The administrative judge was not required to discredit all of the supervisor's testimony once she found him not credible regarding the appellant's responses to emails. *Cross v. Department of the Army*, 89 M.S.P.R. 62, ¶ 14 (2001). However, the specific instance of lack of credibility is a proper consideration in assessing the witness's overall credibility. *Id.*; *see Sternberg v. Department of Defense*, 41 M.S.P.R. 46, 54 (1989) (explaining that once an administrative judge has discredited a witness's testimony on one charge, he must reasonably explain why he accepts the testimony as credible on other charges). As discussed above, the administrative judge considered and gave a reasoned explanation for why she credited some of the supervisor's testimony. 0266 ID at 12-14, 18-21, 24-25, 27; 0496 ID at 17-19. We find that the administrative judge's analysis was sufficient to justify her factual findings.

¶53     The appellant also disagrees with a number of other factual findings, but generally provides no record citations or refers to evidence that the administrative judge already considered and discounted. 0266 PFR File, Tab 1 at 18-22; 0496 PFR File, Tab 1 at 11-22, 25-28. We decline to revisit her findings on review. *Broughton*, 33 M.S.P.R. at 359; *see Crosby*, 74 M.S.P.R. at 105-06.

¶54     Accordingly, we affirm the initial decision, as modified above, still sustaining the denial of the appellant's WIGI and his removal for unacceptable performance.

## NOTICE OF APPEAL RIGHTS[14]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain

---

[14] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court

of appeals of competent jurisdiction.[15]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[15] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                          /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board
Washington, D.C.